**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Barry E. Kihl, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Barry E. Kihl ("Plaintiff" or "Mr. Kihl") brings this action against Unum Life Insurance Company of America under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et. seq*. He seeks appropriate remedies as a result of Defendant's wrongful reduction of long-term disability ("LTD") benefits that Defendant paid for nearly 10 years.

### I. PARTIES

1. Mr. Kihl is an adult individual who at all times relevant to the facts set forth in this Complaint was and is currently a resident of Allegheny County, Pennsylvania, and resides in this District.

2. Defendant Unum Life Insurance Company of America ("Unum") is an operating subsidy of the Unum Group, which upon information and belief is a Maine corporation with its principal place of business at 2211 Congress Street, Portland ME 04122-0002, and is authorized to do business in the Commonwealth of Pennsylvania.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) and (f) and 28 U.S.C. § 1331.

### III.  FACTUAL AVERMENTS

4. Mr. Kihl, who is now 50 years old, was diagnosed with non-Hodgkin lymphoma at age 12.

5. Despite his health problems, Mr. Kihl completed high school in 1982, and worked mowing lawns, as a carpenter, and as a sous chef.  After finally completing his undergraduate work, he settled down creating computer software for the chronically ill.

6. In 1991, Mr. Kihl was approved by the Social Security Administration ("SSA") for Social Security Disability Income ("SSDI") benefits due to the disabling effects of idiopathic pulmonary fibrosis, which his treating doctors postulated had developed as a result of the bleomycin toxicity (a type of chemotherapy) treatment for his non-Hodgkin lymphoma at Memorial Sloan Kettering.

7. Nonetheless, he worked towards degrees in psychology, literature, and information science from SUNY Stonybrook and then the University of Pittsburgh until 1994.

8. The chemotherapy, particularly the bleomycin, used to treat his non-Hodgkin lymphoma required Mr. Kihl to undergo a lung transplant in 1995.

9. In 2000, he began working for UPMC as Project Manager in software development, and his SSDI benefits were suspended after a trial return to work period.

10. As an employee of UPMC, Mr. Kihl was a participant in a long term disability plan (the "LTD Plan") underwritten by Unum Life Insurance Company of America.

11. The LTD Plan provided that an employee is disabled and entitled to benefits after a 180 day elimination period when:

- you are limited from performing the **material and substantial duties** of your regular occupation due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury. . . .

> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

12.     Under the LTD Plan, Unum is entitled to subtract from a disabled participant's gross disability payment certain deductible sources of income, including the amount received as disability payment under the Social Security Act.

13.     However, the LTD Plan provides that:

> With the exception of retirement payments, Unum will only subtract deductible sources of income *which are payable as a result of the same disability*.

(emphasis added).

14.     Mr. Kihl suffered a cardiac arrest on February 14, 2003, and was forced out of work. His SSDI was reinstated due to his cardiac condition at this time, he continues to be approved for and has received SSDI for this cardiac condition to the present time, and the basis for his receipt of SSDI remains unchanged to date.

15.     He did return to work for a period of time following a trial return to work period. However, by 2005, the anti-rejection medication he used in connection with the 1995 lung transplant began to affect his kidneys, necessitating a kidney transplant and a "redo" of the lung transplant.

16.     In March, 2006, the SSA again reinstated Mr. Kihl's SSDI benefits based on his cardiac condition, and the SSA continues to pay SSDI benefits due to the cardiac arrest that occurred in February 2003.

17.     Unfortunately, Mr. Kihl has not been able to return to work since the kidney transplant. As a result of his multi-organ transplants, Mr. Kihl needs to avoid crowds, groups or high traffic people areas because he is very susceptible to infections and sickness.

18. Effective June 3, 2005, after a 180 day elimination period, Unum approved Mr. Kihl's monthly benefits in the amount of $ 4,315.11 under the LTD Plan based on his "lung condition, renal condition, tx of both conditions and ongoing sx."

19. The basis of Mr. Kihl's claim for benefits under the LTD Plan has never changed.

20. As recently stated by his treating physician, Dr. Bruce Johnson, in July, 2014, the primary diagnosis that impacts Mr. Kihl's functional capacity is lung transplant rejection. The secondary diagnoses are liver failure, chronic hepatitis, and kidney failure, status post transplant. Among his significant restrictions and limitations, Dr. Johnson has noted "immunosuppression from single lung transplant, kidney transplant and redo lung transplant and I have advised him to avoid crowded environments such as cubicles with risk for infection or stressful environments which can provoke infection or rejection." As Dr. Johnson notes, Mr. Kihl is further limited because of "cognitive limitations from long term tacrolimus use, kidney failure and liver failure."

21. Mr. Kihl's medical history and current disability were summarized in a letter by Dr. Johnson dated July 24, 2014:

> Most notably, [Mr. Kihl] is severely limited by reduced lung function following redo lung transplantation and dyspnea at rest and with exertion limit his activities. He unfortunately acquired hepatitis C from a blood transfusion and tolerated it remarkably well until this last year when cirrhosis with ascites compromised his respiratory function to the point that he required emergent paracentesis in May 2014 to relieve pressure on his diaphragm lungs. He improved transiently, but required repeated paracentesis subsequently and is not scheduled to begin a three month course of antibiotics for his hepatitis. … Respiratory failure and hepatitis have led to profound fatigue and decreased concentration. Decreased cognitive function is also a complication of long calcineurin inhibitor use. …
>
> [I have advised Mr. Kihl not to work.] Mr. Kihl has limited physiologic reserve and would not tolerate any episode of infection or rejection without significant risk of death. In our experience, when patients attempt to return to work, the stress of employment often provides infection or rejection. In fact, of the more than 2000 patients we have transplanted …, less than five percent of those have ever been able to return to full time employment and Mr. Kihl is no longer one of our healthy patients. I have and continue to advise him to refrain

from employment and I consider him completely disabled.

22. While Mr. Kihl is disabled under the above-referenced policy due to his lung, kidney and liver failure, his eligibility for SSDI began long before the onset of his current disability due to his lung, kidney and liver failure, for which he is entitled to benefits under the LTD policy.

23. Accordingly, as Unum representatives confirmed many times, his LTD benefit should not be reduced by his SSDI.

24. In a letter dated September 29, 2005 regarding "offsetable incomes," Unum advised Mr. Kihl that it would "only subtract deductible sources of income which are *payable as a result of the same disability.*" (emphasis added).

25. Unum confirmed that the provision set forth in paragraphs 13 and 24 above means that there is an offset for SSDI only if the benefits are being "paid for the same conditions as his [LTD]."

26. Accordingly, Unum determined that it should not reduce Mr. Kihl's LTD benefit by the amount of his SSDI benefit.

27. On November 3, 2006, Unum determined that Mr. Kihl was disabled from "any gainful occupation" and advised him that he was approved for benefits through his 65th birthday, September 18, 2029.

28. Until April 4, 2014, Unum properly determined, in accordance with the unambiguous terms of the LTD Plan, that Mr. Kihl's SSDI benefits were awarded due to his cardiac arrest in February 2003, *before* the onset of his disabling lung, kidney and liver failure, which preclude him from being exposed to other people and which have caused his cognitive decline. This latter disability, for which LTD benefits are paid under Unum's policy, is *not the*

*same disability* as that for which his SSDI benefits, the basis of which has not changed since February 2003, are payable. Throughout this time and in accordance with the terms of the LTD Plan, Mr. Kihl's SSDI benefits were not deducted from his LTD benefit.

29. Mr. Kihl relied on the combination of SSDI benefits and LTD benefits to support himself and his family.

30. Nonetheless, in late 2013, Unum decided to transfer this claim to Kelley Brown, to find a way to offset Mr. Kihl's SSDI award.

31. In a letter dated April 4, 2014, Unum advised Mr. Kihl that, contrary to its letter dated September 29, 2005, it would begin to subtract SSDI payments from his LTD benefits, stating that disability means "purely the inability to work" without regard to the basis of that inability to work.

32. In April 2014, Unum began to reduce the amount of Mr. Kihl's monthly benefit from $4,315.11 to $1,005.11. It is unclear as to why the offset was so large, given that according to Unum's records, the original amount of his SSDI benefit in 2005 was only $2,207.00.

33. The April 4, 2014 letter did not comply with the requirements of the full and fair review provisions of ERISA § 503, 29 U.S.C. § 1133, and the Department of Labor regulations thereunder, found at 29 C.F.R. § 2560.503-1, in that it fails to provide, *inter alia*, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, or a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

34. Nonetheless, Mr. Kihl timely appealed the adverse determination set forth in the letter dated April 4, 2014.

35. Unum denied the appeal by letter dated October 30, 2014, erroneously stating that Mr. Kihl "received SSDI benefits and LTD benefits at the same time …."

36. In fact, he began receiving SSDI benefits for his cardiac arrest in February 2003 and he began receiving LTD benefits for his "lung condition, renal condition, tx of both conditions and ongoing sx" which arose approximately one year later.

37. Unum, acting under a conflict of interest, breached its fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, in failing to act for the exclusive benefit of Mr. Kihl and in failing to act in accordance with the terms of the LTD Plan.

38. Mr. Kihl has exhausted all administrative levels of appeal.

## IV.  CLAIMS

### COUNT I—DENIAL OF LTD PLAN BENEFITS

39. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

40. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff may bring an action to recover benefits due him under the terms of the LTD Plan, to enforce his rights under the terms of the LTD Plan, or to clarify his rights to future benefits under the terms of the LTD Plan.

41. The policy clearly states that SSDI should be subtracted only if it is payable "as a result of the same disability." If the word disability means "purely the inability to work," the word "same" is superfluous, inasmuch as SSDI benefits, like LTD benefits, are always paid due to an inability to work.

42.  The language of the policy clearly means that the SSDI benefit must be paid due to the *same* disability in order to reduce the LTD benefit.

43.  If the language of the policy is ambiguous, such ambiguity must be resolved in favor of the insured, Mr. Kihl.

44.  Because Mr. Kihl's SSDI benefit is payable due to cardiac arrest, not due to his disabling lung, kidney and liver failure, which preclude him from being exposed to other people, which have caused his cognitive decline and which are the basis for his LTD benefit.

45.  Unum acted arbitrarily and capriciously in reducing Mr. Kihl's benefits when there was no new medical evidence to support its decision to construe the LTD Plan in a manner that renders terms of the LTD Plan superfluous.

46.  The basis for payment of SSDI benefits and the basis for payment of LTD benefits have remained unchanged since the inception of payment of benefits, and Unum is not permitted to reduce benefits without any new information to show that the SSDI benefits are paid for the same disability as payment of LTD benefits.

**COUNT II—CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA § 502(a)(3)**

47.  The foregoing paragraphs are incorporated herein by reference as if set forth at length.

48.  In the alternative, Plaintiff brings this claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the Plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the LTD Plan.

49.  In determining Mr. Kihl's LTD benefits, Unum acts as a fiduciary and, in accordance with 29 U.S.C. § 1104(a), UNUM must discharge its duties with respect to the LTD

8

plan solely in the interest of the participants, like Mr. Kihl, and for the exclusive purpose of providing benefits to participants, like Mr. Kihl, and in accordance with the documents and instruments governing the plan.

50. Unum violated these fiduciary duties in reading of its policy in a manner that renders terms of its policy superfluous, and in otherwise failing to act for the exclusive purpose of providing benefits and in accordance with the documents governing the plan.

51. Unum also violated the full and fair review provisions of ERISA § 503, 29 U.S.C. § 1133, and the Department of Labor regulations thereunder, found at 29 C.F.R. § 2560.503-1, and denied Mr. Kihl's appeal for reasons that are not supported by the record.

## COUNT III—CLAIM FOR EQUITABLE ESTOPPEL AND/OR WAIVER UNDER ERISA § 502(a)(3)

52. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

53. In the alternative, Unum is barred from reducing Mr. Kihl's monthly benefit based on equitable estoppel and/or waiver.

54. After correctly providing benefits under the LTD Plan without subtracting Mr. Kihl's SSDI for nearly 10 years, Unum knew or should have known that Mr. Kihl would rely on those benefits in ordering his financial affairs and providing for his family, and Mr. Kihl did so rely.

55. Mr. Kihl detrimentally relied on Unum's provision of unreduced benefits under the LTD Plan without subtracting his SSDI benefit awarded for his cardiac condition without an offset for SSDI in ordering his financial affairs and providing for his family.

56. Unum cannot now begin to read its policy in a manner that renders terms of its policy superfluous.

57.     Given Unum's longstanding course of conduct, and Mr. Kihl's reliance thereon, all of which, taken singly or in the aggregate, constitute extraordinary circumstances, Unum is estopped from reducing Mr. Kihl's benefit and/or is barred from subtracting his SSDI benefit under the doctrine of waiver.

## V.  RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court:

(a)     Grant judgment in Plaintiff's favor and against Defendant;

(b)     Order that Defendant restore to Plaintiff benefits in the amount of $4,315.11;

(c)     Order that Defendant pay to Plaintiff the difference between the full benefit and the amount paid from April 2014 to the date of judgment, without subtracting SSDI benefits, including interest thereon;

(d)     Alternatively, order that the LTD Plan be reformed to provide that LTD benefits shall not be reduced by SSDI benefits which are awarded for a condition other than the conditions for which benefits are awarded under the LTD Plan;

(e)     Order equitable relief to make Plaintiff whole under, but not limited to, theories of surcharge, restitution or equitable estoppel.

(f)     Order that Defendant pay the costs of suit, including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

                          Respectfully submitted,

Dated:  October 26, 2015                 s/ Tybe A. Brett   .
                                                      Tybe A. Brett
                                                        PA No. 30064
                                                        tbrett@fdpklaw.com

                                                       Sarah E. Martin
                                                       PA No. 316419
                                                       smartin@fdpklaw.com
                                                       FEINSTEIN DOYLE PAYNE
                                                          & KRAVEC, LLC
                                                       429 Forbes Avenue, Suite 1705
                                                       Pittsburgh, PA 15219
                                                       (412) 281-8400 (Tel)
                                                       (412) 281-1007 (Fax)

                                                       *Attorneys for Plaintiff*